**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-4074**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

CALVIN IGNATIOUS SAVOY,

                    Defendant - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.  Andre M. Davis, District Judge.  (1:05-
cr-00415-AMD-4)

Argued:  January 30, 2009                Decided:  March 6, 2009

Before SHEDD and AGEE, Circuit Judges, and Arthur L. ALARCÓN,
Senior Circuit Judge of the United States Court of Appeals for
the Ninth Circuit, sitting by designation.

Affirmed in part and vacated and dismissed in part by
unpublished per curiam opinion.

**ARGUED:** Ansley Claire Tillman, KING & SPALDING, L.L.P.,
Washington, D.C., for Appellant.  Andrea L. Smith, OFFICE OF THE
UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON
BRIEF:** Bradley H. Cohen, Gary G. Grindler, KING & SPALDING,
L.L.P., Washington, D.C., for Appellant.  Rod J. Rosenstein,
United States Attorney, Matthew Jeweler, Law Clerk, OFFICE OF
THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Calvin Savoy was arrested, indicted, and convicted on charges of conspiring to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846, and using a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c). Savoy was sentenced on the conspiracy charge to a mandatory minimum life sentence under 21 U.S.C. § 841(b)(1)(A) and sentenced on the firearm charge to a mandatory minimum, consecutive sentence of 10 years under 18 U.S.C. § 924(c)(1)(A)(iii). Savoy appeals, arguing the Government's evidence at trial was insufficient as a matter of law to prove that he knowingly joined a conspiracy or that his firearm use occurred during and in relation to a drug-trafficking crime. Savoy also contends the district court erred in instructing the jury, improperly admitted evidence of another crime, and incorrectly imposed the statutory mandatory minimum life sentence.

For the reasons set forth below, we affirm the conspiracy conviction and sentence on that charge. However, because we hold that the Government failed to prove that Savoy's firearm use occurred during and in relation to a drug-trafficking crime, we vacate his conviction and sentence on that charge.

3

I.

In September 2005, Savoy was indicted with 6 co-defendants on a charge of conspiring to distribute and possess with intent to distribute 50 grams or more of cocaine base (i.e., crack cocaine), in violation of 21 U.S.C. § 846 ("Count One"). In addition, Savoy was indicted individually on a count of possessing and discharging a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) ("Count Four"). Savoy pled not guilty and was tried individually.

To establish the existence of the conspiracy alleged in Count One, three indicted co-conspirators testified at trial that Pioneer City, a housing complex in Anne Arundel County, Maryland, was an open-air drug market in which the members of the conspiracy cooperated to sell crack cocaine and prevent non-members from selling it. These witnesses testified that the members of the conspiracy had a code of silence against speaking to the police and drove out drug dealers from other areas who attempted to enter the Pioneer City drug market. In addition, when one co-conspirator ran out of crack cocaine, he would refer customers to another co-conspirator or other co-conspirators would share their supply with him.

To establish that Savoy was a member of the conspiracy, an unindicted co-conspirator, Fabian Gray, testified that Savoy had

4

been present when Gray sold crack cocaine. Gray also gave Savoy sufficient crack cocaine to restart his drug dealing business after Savoy was released from prison in 2004. Evidence also indicated that Savoy participated in the November 2004 beating of Kevin Johnson in Pioneer City. Johnson was unable to identify his assailants but Savoy's fingerprints were recovered from his Cadillac, which was stolen during the attack. The Government argued that Johnson's beating was an example of the conspiracy's efforts to exclude outsiders from Pioneer City.

To establish the firearm offense alleged in Count Four, witnesses testified that members of the conspiracy were present at a September 2004 birthday party held at a nightclub near Pioneer City. Savoy was seen and photographed brandishing a handgun during the party. Individuals from Annapolis, where a rival drug gang operated, were also present at the party. A fight broke out and spread outside, where Officer William Hicks observed "pockets of people fighting" in the parking lot. While attempting to break up the various fistfights, Hicks heard and saw an unidentified black male firing shots into the air. While pursuing that suspect, Hicks was shot in the right arm. Witnesses identified Savoy as the shooter. Though there was no evidence that drugs were distributed or even present during the party, the Government argued that Savoy shot Hicks to impress

5

the conspiracy's rivals from Annapolis and deter them, and police, from interfering with the Pioneer City drug market.

At the conclusion of the evidence, Savoy entered a motion for judgment of acquittal under Rule 29 challenging the sufficiency of the evidence on both counts. The district court denied the motion and the case was submitted to the jury. On the final day of its deliberations, the jury sent a question to the court: "Clarify how the drugs charges should relate to the defendant's association with the conspiracy? During the trial there was a statement by the judge about this. This would be the charges which occurred during the timeframe of 2002-2005." (J.A. 300.) The court, without consulting counsel, responded with its own note: "Dear Jury: Your question is unclear. Please attempt to clarify your question." (J.A. 301.) The jury did not reply but found Savoy guilty on both counts and entered special verdicts that the amount of crack cocaine involved in the conspiracy relating to Count One was 50 grams or more and that the firearm relating to Count Four had been discharged.

The court informed counsel of the jury's question when counsel were recalled to receive the jury's verdict. The court summarized the event, offered to show the notes, and asked counsel, "[A]nybody have any concerns or questions?" Neither party objected. (J.A. 301-02.)

The Probation Office subsequently prepared Savoy's pre-sentencing report, which included 5 prior state criminal convictions. Savoy objected to the inclusion of two drug convictions: one from 1994 (K950039), because he was under 18 at the time of the offense, and one from 1997 (K9700895), because it was classified a misdemeanor under state law. Savoy did not challenge the inclusion of a third drug conviction. Finding that Savoy had at least two prior felony drug convictions and relying on the jury's special verdict that the conspiracy involved 50 grams or more of cocaine base, the district court imposed the mandatory minimum life sentence required by 21 U.S.C. § 841(b)(1)(A) on Count One. Relying on the jury's special verdict that Savoy discharged a firearm during and in relation to a drug-trafficking offense, the district court also imposed the mandatory minimum, consecutive sentence of 10 years required by 18 U.S.C. § 924(c)(1)(A)(iii) on Count Four. Savoy filed a timely notice of appeal and we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

Savoy contends the Government's evidence is insufficient to prove that he knowingly and voluntarily joined any conspiracy to distribute crack cocaine or to prove that he shot Officer Hicks

7

during and in relation to a drug-trafficking offense. Savoy also argues that the district court should not have admitted evidence of Kevin Johnson's beating under Rule 404(b) of the Federal Rules of Evidence and that it erred in failing to clarify its jury instructions in response to the jury's note on the last day of deliberations. Finally, Savoy argues that the district court improperly imposed the mandatory minimum life sentence required by 21 U.S.C. § 841(b)(1)(A) because the 50 grams of crack cocaine found by the jury to be involved in the conspiracy should not have been attributed to Savoy and because the district court improperly considered his 1994 and 1997 state drug convictions.

A.

We first consider Savoy's argument that the evidence was insufficient to support his convictions. When a criminal conviction is appealed on the ground that the underlying evidence is insufficient, we review the evidence in the light most favorable to the Government to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Abuelhawa, 523 F.3d 415, 422 (4th Cir. 2008) (citing United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (en banc)).

8

1.

   In order to prove conspiracy to distribute and possess cocaine base with intent to distribute, the government [must] establish beyond a reasonable doubt that: "(1) an agreement" to distribute and "possess . . . with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy."

United States v. Yearwood, 518 F.3d 220, 225-26 (4th Cir. 2008) (quoting Burgos, 94 F.3d at 857). Savoy argues that the evidence does not establish that he knew of any conspiracy or knowingly entered into any agreement to distribute crack cocaine. We disagree.

Because "a conspiracy is clandestine and covert," it "generally is proved by circumstantial evidence and the context in which the circumstantial evidence is adduced." Burgos, 94 F.3d at 857. "A conspiracy, therefore, may be inferred from a development and collocation of circumstances." Id. at 858 (internal quotation marks omitted). Once a conspiracy has been shown to exist, "the evidence need only establish a slight connection between the defendant and the conspiracy to support conviction." Id. at 861 (internal quotation marks omitted).

"[F]requently . . . contemporary drug conspiracies . . . result[] in only a loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular

9

drug consumption market . . . ." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Witnesses, including several of the alleged co-conspirators, testified at Savoy's trial that at the time of his arrest the Pioneer City housing complex was an open-air drug market in which drug dealers conspired to sell crack cocaine, protect each other from police investigation, maintain the market for crack cocaine sales by sharing supplies or referring customers, and excluding non-members. While Savoy argues that he had no knowledge of the conspiracy and never agreed to join it, Gray testified that Savoy knew he sold drugs and that Savoy later accepted drugs from Gray given for the express purpose of re-establishing Savoy in the business of selling crack cocaine in Pioneer City following his release from prison.

Other evidence showed that, in a drug market where members of the conspiracy excluded non-members, Savoy was permitted to sell drugs and had amicable relations with co-conspirators. For example, three co-conspirators testified that Savoy sold drugs in Pioneer City and Savoy was arrested in September 2004 for an open alcohol container violation when officers caught him drinking beer with two co-conspirators. A search subsequent to that arrest led to the discovery of eight bags of crack cocaine in Savoy's pocket. Savoy also had crack cocaine in his possession in Pioneer City at the time of his arrest on the

charges in the case at bar. Finally, the evidence of Savoy's participation in the beating of Kevin Johnson indicates not only that Savoy was accepted by the conspiracy as one of its members--because the conspiracy allowed him to sell crack cocaine in Pioneer City--but that Savoy actively furthered its goal of excluding non-members even to the point of physical violence.

We conclude this evidence is sufficient to support a rational jury's finding beyond reasonable doubt that a conspiracy to distribute and possess with intent to distribute existed among the crack cocaine dealers in Pioneer City, and that Savoy was a knowing and voluntary member of that conspiracy. Accordingly, we affirm his conviction on Count One.

2.

To establish a violation of 18 U.S.C. § 924(c)(1), "the Government [must] prove: (1) [the defendant] used or carried a firearm (2) during and in relation to (3) a drug trafficking offense." United States v. Lipford, 203 F.3d 259, 265-66 (4th Cir. 2000). "To meet the 'in relation to' requirement, the Government must prove that the firearm has some purpose or effect with respect to the drug trafficking crime[.] . . . [T]he gun at least must facilitate or have the potential of facilitating, the drug trafficking offense." Id. at 266 (internal quotation marks omitted) (ellipsis and alteration in

11

original). Savoy argues that there is no evidence establishing that the shooting of Officer Hicks occurred in relation to the drug conspiracy. We agree.

There is no evidence in the record that any drugs were present at the nightclub, that any drug transactions took place there, or that any activity relating to the conspiracy occurred. The Government argues that Savoy shot Officer Hicks to send a message to the police and rival drug dealers from Annapolis not to interfere in the Pioneer City drug market. However, while witnesses testified that individuals from other areas were at the party and that the fight began with an altercation between someone from Pioneer City and someone from Annapolis, there is no evidence that any rival drug dealers were present. In short, the record fails to establish that Savoy had the audience the Government contends he sought to impress. Similarly, there is nothing but pure speculation that Savoy was in some theoretical way furthering the conspiracy when he shot a police officer during a nightclub brawl.

The Government had the burden to prove beyond reasonable doubt that Savoy used a firearm in relation to the drug conspiracy, i.e., that the firearm facilitated or had the potential to facilitate the conspiracy. The Government did not meet its burden and the district court erred in denying the motion for judgment of acquittal on that charge. Accordingly,

we vacate Savoy's conviction and sentence on Count Four and dismiss that count of the indictment.

### B.

We next turn to Savoy's argument that the district court erred when it failed to supplement the jury's instructions in response to its note and when it admitted the evidence of Kevin Johnson's beating. Savoy did not preserve either issue with a timely objection at trial, so we review for plain error. E.g., Taylor v. Virginia Union University, 193 F.3d 219, 239 (4th Cir. 1999) (failure to object to district court's response to jury question); United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996) (failure to object to admission of evidence under Rule 404). To prevail on plain error review, the defendant

> must demonstrate (1) that an error occurred, (2) that the error was plain, and (3) that it affected his substantial rights. If the defendant satisfies these threshold requirements, correction of the error is within our discretion, which is appropriately exercised only when failure to do so would result in a miscarriage of justice, such as when the defendant is actually innocent or the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

United States v. Farrior, 535 F.3d 210, 222 n.4 (4th Cir. 2008) (internal quotation marks omitted) (alteration in original).

1.

Savoy does not argue that the district court's response to the jury's note was an improper ex parte communication with the jury. Rather, he argues only that the response was insufficient to answer the question the jury's note posed. Any response, or lack of response, to a question from a deliberating jury is within the sound discretion of the trial court. United States v. Ellis, 121 F.3d 908, 925 (4th Cir. 1997).

The district court responded to the jury's note by asking for clarification of its question. Savoy concedes that "[i]t is difficult even now to unpack what the jury's particular question was." (Reply Br. 14.) Savoy argues that the note could indicate that the jury wanted to know more about his state convictions, about his prior arrests, or whether the Government had to prove he sold drugs. Therefore, by all accounts, the jury's note was unclear and we cannot fault the district court's exercise of its discretion to attempt to ascertain the precise issue on which the jury sought clarification before issuing any supplemental instructions. Savoy therefore fails to satisfy the first prong of plain error review because he has not demonstrated that an error occurred. Moreover, because the jury continued its deliberations and returned a verdict without further instruction, Savoy has not demonstrated how the district

14

court's response affected his substantial rights. Savoy simply has not shown plain error on this issue.

2.

Savoy argues that the district court erred in admitting evidence of the assault on Kevin Johnson because "[t]he only purpose of this testimony was to portray Mr. Savoy's character in a negative light," in violation of Federal Rule of Evidence 404(b).[1] (Br. Appellant 37.) Admission or exclusion of evidence under Rule 404(b) is within the discretion of the trial court. United States v. Jackson, 327 F.3d 273, 298 (4th Cir. 2003).

The Government contends "the beating . . . was an act committed in furtherance of the Pioneer City drug conspiracy" because "[t]he intimidation and physical assault of outsiders was, as alleged in the indictment, a specific method of operation utilized by the conspirators to protect the conspiracy. . . . [T]he Pioneer City conspiracy depended on its ability to exclude others--if necessary through physical force." (Br. Appellee 38.)

---

[1] Savoy also argues for the first time in his reply brief that the evidence should not have been admitted because its prejudicial effect outweighed its probative value in violation of Rule 403. We do not consider arguments raised for the first time in a reply brief. See United States v. Brooks, 524 F.3d 549, 556 n.11 (4th Cir. 2008).

The Government established through the testimony of Savoy's co-conspirators that the conspiracy did in fact endeavor to exclude outsiders from the Pioneer City area. The Government then introduced the evidence of Kevin Johnson's beating, and Savoy's role in the beating, to link Savoy to the conspiracy and its effort to protect its turf. We see no abuse of discretion in the district court's decision to admit the evidence for that purpose and Savoy has failed to meet his burden of proving an error occurred. We find no reversible error on this issue.

C.

Finally, Savoy argues the district court erred by imposing the mandatory minimum life sentence required by 21 U.S.C. § 841(b)(1)(A). The district court imposed the sentence based on Savoy's three prior state drug convictions and the jury's special verdict that 50 grams or more of crack cocaine were involved in the conspiracy. At sentencing, Savoy challenged the inclusion of a 1994 conviction (K950039) on the ground that he was a minor at the time of the offense and a 1997 conviction (K9700895) on the ground that it was classified as a misdemeanor under state law. On appeal, Savoy concedes that the Supreme Court's decision in Burgess v. United States, 128 S. Ct. 1572 (2008), forecloses his challenge to the 1997 conviction. Together with an unchallenged 1995 conviction (K9501975), Savoy

16

clearly has at least two prior qualifying convictions, and we need not reach his challenge to the inclusion of the 1994 conviction.

Savoy now argues, however, that the district court erred in attributing to him all 50 grams or more of crack cocaine found by the jury to have been involved in the conspiracy.[2]  This issue was not raised below and is therefore subject to plain error review.  E.g., United States v. Pendergraph, 388 F.3d 109, 113 (4th Cir. 2004) (failure to raise objection at sentencing hearing).

In United States v. Collins, 415 F.3d 304 (4th Cir. 2005), we held that the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), required a jury to find beyond reasonable doubt the amount of crack cocaine attributable to each specific defendant involved in a drug conspiracy.  415 F.3d at 314.  The jury's finding may be based on evidence (1) that the individual defendant himself distributed an amount of crack cocaine or (2) that other members of the conspiracy did so, and their actions were reasonably foreseeable to the individual

---

[2] Savoy does not argue that the evidence is insufficient to establish that 50 grams or more of crack was involved in the conspiracy.  He concedes that the Government introduced evidence that members of the conspiracy collectively possessed 97.44 grams.  (Br. Appellant 43.)  Rather, he argues that the district court improperly attributed 50 grams or more of this total to him for sentencing purposes.

17

defendant.  Id. at 311.  A district court must not impose a sentence under § 841(b) based on a jury's finding of the amount attributable to the conspiracy generally.  Id. at 314.  In United States v. Foster, 507 F.3d 233 (4th Cir. 2007), we held that a district court's failure to comply with Collins by instructing the jury to make individualized findings constitutes reversible plain error.[3]  Id. at 251-52.

There is no evidence in the record that Savoy personally distributed 50 grams or more of crack cocaine.  Consequently, "for the statutory maximums and mandatory minimums of § 841(b) to apply . . . the jury must determine that the threshold drug amount was reasonably foreseeable to the individual defendant."  Brooks, 524 F.3d at 558 (quoting Foster, 507 F.3d at 250-51) (internal quotation marks omitted).

In Collins, the district court instructed the jury that "[t]he amount of drugs applies to the entire group of conspirators.  In other words, it's a conspiracy to distribute

---

[3] Foster was tried jointly with two co-defendants and all of them received life sentences under § 841(b).  Foster's co-defendants also received life sentences arising from 18 U.S.C. § 924(j).  We determined that the district court's § 841(b) sentencing error had no effect on the co-defendants and declined to reverse their sentences.  However, because Foster had not been sentenced to life imprisonment under any other charge, the life sentence improperly imposed under § 841(b) was necessarily prejudicial and required reversal under the plain error standard of review.  Id. at 251-52.

18

50 grams or more of crack cocaine.  That's what the charge is. So the amount applies to the conspiracy, to the group." 415 F.3d at 311.  In Foster, "the district court instructed the jury to determine . . . the amount of crack cocaine 'involved in the conspiracy.'"  507 F.3d at 249.  In Brooks, the district court instructed the jury "that 'the amount of controlled substances you will need to determine . . . is not the amount a single defendant may have been involved with, but rather the amount of controlled substances involved in the conspiracy as a whole.'" 524 F.3d at 557 (ellipsis in original).  These cases are clearly distinguishable from the one before us.

The district court in this case specifically instructed the jury to find an amount of crack cocaine individually attributable to Savoy, whether he personally distributed it or possessed it with intent to distribute or whether the distribution or possession with intent to distribute by his co-conspirators was reasonably foreseeable to him:

> A special verdict form, which you will see in a moment, ladies and gentlemen, will be given to you on which if you find the government has proven the defendant's membership in the charged conspiracy beyond a reasonable doubt you must use to determine the quantity of drugs attributable to Mr. Savoy.
> . . . .
> In determining what quantity of controlled substance is attributable to the defendant, if any, you should consider the following factors:
> First, the defendant is accountable for the quantity of drugs which he personally distributed or possessed with intent to distribute[;]

Second, the defendant is also accountable for any quantity of drugs which he attempted to or planned to distribute or possess with intent to distribute. Specifically, the defendant is accountable for those drugs even if those drugs were never actually obtained or distributed, so long as an objective of the conspiracy was for the defendant to distribute or possess with intent to distribute such a quantity of drugs;

Third, the defendant is also accountable for any quantity of drugs which another member of the conspiracy distributed or possessed with intent to distribute as part of the conspiracy, so long as it was reasonably foreseeable to the defendant, Mr. Savoy, that such a quantity of drugs would be involved in the conspiracy which he joined;

Fourth and finally, the defendant is also accountable for any quantity of drugs which another member of the conspiracy attempted to or planned to distribute or possess with intent to distribute, so long as it was reasonably foreseeable to the defendant, Mr. Savoy, that such a quantity of drugs would be involved in the conspiracy which he joined. The defendant is accountable for those drugs even if those drugs were never actually obtained or distributed by other members of the conspiracy, so long as an objective of the conspiracy was for the other members of the conspiracy to distribute or possess with intent to distribute such a quantity of drugs.

Now, these last two rules apply even if the defendant did not personally participate in the acts or plans of his co-conspirators or even if the defendant did not have actual knowledge of those acts or plans, so long as those acts or plans were reasonably foreseeable to the defendant. The reason for this is simply that a co-conspirator is deemed to be the agent of all other members of the conspiracy. Therefore, all of the co-conspirators bear criminal responsibility for acts or plans that are undertaken to further the goals of the conspiracy.

As I said a moment ago, your findings about the quantity of controlled substances attributable to the defendant will be noted on the verdict form, and I will send you that form shortly.

(J.A. 288-90.)

20

These instructions, unlike those given in Collins, Foster, and Brooks, clearly direct the jury to make an individualized finding of the amount of crack cocaine involved in the conspiracy attributable to Savoy, either because he personally distributed it or possessed it with intent to distribute or because it was reasonably foreseeable to Savoy that his co-conspirators distributed it or possessed it with intent to distribute. Accordingly, there is no Collins error here. The jury's special verdict that 50 grams or more of crack cocaine were involved in the conspiracy is an individualized finding specific to Savoy and the district court properly relied on it to impose the mandatory minimum life sentence required by § 841(b)(1)(A).

## III.

For the foregoing reasons, we affirm the judgment of the district court as to Count One, and vacate the judgment as to Count Four and dismiss that count of the indictment.

AFFIRMED IN PART AND
VACATED AND DISMISSED IN PART