In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1031

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADRIAN BAILEY,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 1:15-cr-10033-MMM-JEH-1 — **Michael M. Mihm**, *Judge.*

ARGUED NOVEMBER 1, 2017 — DECIDED FEBRUARY 16, 2018

Before MANION, KANNE, and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge.* Adrian Bailey offered to sell marijuana to an informant who had already brokered the purchase of a firearm from him; the informant accepted the offer and purchased $40 worth of marijuana from Bailey contemporaneously with the firearm purchase. On that basis, Bailey was convicted after a bench trial of possessing a firearm in further-

ance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). Bailey appeals the conviction, contending that the facts do not tie the gun and the marijuana purchase together so as to demonstrate that the gun actually furthered the marijuana sale; as he sees it, his possession of the firearm was simply coincident with the marijuana transaction. We disagree. Because it was the opportunity to purchase a firearm that brought the informant to Bailey and made possible the secondary sale of marijuana to the informant, the facts support the finding that Bailey's possession of the weapon furthered the marijuana sale. We therefore affirm his conviction.

## I.

In late March of 2015, Bailey telephoned Jordan Allen to inquire about a lawnmower that Allen had posted for sale on Facebook. Allen and Bailey had met on a prior occasion through Bailey's father, who had cleaned some automobiles for Allen. Bailey indicated that he was interested in the lawnmower and offered to trade Allen a gun for it. Allen said that he would have to think about it. During the same conversation, the two had what Allen would later describe as a "light discussion" about an opportunity to purchase marijuana: Bailey told him that he had some "good weed" for sale if Allen was interested. R. 45 at 46, 94.

Allen, as it turned out, was a convicted felon who at that time was facing charges of aggravated battery and criminal damage to property; he also knew that Bailey had a criminal history and was on parole. He contacted Galesburg, Illinois police officer Bryan Anderson, with whom he had worked as an informant for a number of years, in the hope of parlaying

the call from Bailey into a dismissal of the criminal charges pending against himself. Anderson directed Allen to see if Bailey would sell the gun to him for cash rather than trading it for the lawnmower.

Allen followed up with Bailey about the possibility of buying the gun, and the two proceeded to have a number of telephone conversations and exchanges of text messages over the terms of a purchase. Bailey initially proposed to sell Allen two guns for $500. Allen replied that it was his "buddy" who was going to purchase the guns, and that Allen was waiting for his friend to assemble the money. Bailey urged him to "hurry up" or the guns would be sold to someone else. R. 45 at 49. Bailey subsequently told Allen that those guns had in fact been sold, but he told Allen he could sell him another (single) gun for $200. They arranged to meet at Bailey's home to complete the transaction; Bailey texted Allen his address.

Allen had also advised Anderson that Bailey had marijuana available for sale, and Anderson had instructed Allen to go ahead and buy a small amount. Anderson remarked that the dual purchase was a "more plausible" scenario that might allay any suspicions on Bailey's part about the transaction. Allen never discussed with Bailey in advance what quantity of marijuana Bailey had available or the terms on which he would sell it to Allen. Allen simply assumed that Bailey would have at least $40 worth on hand to sell him.

The transaction was consummated at Bailey's home in Galesburg on March 31, 2015. Deputy Ben Johnston of the Peoria County Sheriff's Office, who would pose as the "buddy" who wanted the gun, met Allen ahead of time.

Johnston had $200 in pre-recorded 20-dollar bills with him to buy the gun, and he gave another $40 in pre-recorded cash to Allen to purchase the marijuana. Johnston used a key-fob camera to record the meeting. After Bailey informed them by phone that the gun had arrived, Allen and Johnston drove together to his home.

Bailey met them on the front porch of his residence, handing Allen a red and black "Beats by Dr. Dre" headphones box as they entered the home. Allen put the box down on a couch, prompting Bailey to point at the box and remark, "It's in there." R. 45 at 15. Johnston sat down next to the box and opened it to reveal a Smith & Wesson revolver inside. As Johnston was inspecting the gun, Bailey asked Allen whether he still wanted some marijuana. Allen responded in the affirmative and handed Bailey the $40. Bailey removed five small baggies of marijuana from a larger bag and handed them to Allen.[1] Bailey then picked up the gun and manipulated it to show Johnston that it was in working condition. The gun was unloaded, and Johnston asked Bailey about ammunition. Bailey said that he could provide bullets on the following day. Bailey remarked that he had sold six other guns over the course of the preceding week and might be able to sell additional firearms to Johnston if he was interested. Johnston paid Bailey $200 for the firearm, and he and Allen left Bailey's home.

A warrant-authorized search of Bailey's residence was conducted later that same day. Officers recovered $220 of the

---

[1] The five baggies were later determined to contain 4.7 grams of marijuana.

$240 in pre-recorded bills that Allen and Johnston had used to buy the marijuana and the revolver. They also retrieved roughly 90 grams of marijuana from multiple bags found around the house, as well as a digital scale.

A grand jury later charged Bailey with three offenses: (1) possession, with the intent to distribute, the marijuana he sold to Allen, in violation of 21 U.S.C. § 841(b)(1)(C); (2) possession of a firearm following a felony conviction, in violation of 18 U.S.C. § 922(g)(1); and (3) possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).[2] Bailey pleaded guilty to the first two offenses, but opted for a bench trial on the section 924(c) charge.

After a one-day trial at which Allen, Anderson, and Johnston testified for the government, Judge Mihm denied Bailey's motion for a judgment of acquittal, *see* Fed. R. Crim. P. 29, and convicted him of possessing a firearm in furtherance of a drug trafficking offense. R. 32; R. 46. Although the judge characterized Allen's testimony as "checkered," R. 46 at 4, he credited Allen's account of events leading up to the March 31 purchase of the firearm and marijuana.[3] And after reviewing the video recording of the transaction captured by Johnston's key-fob camera, he was confident that Bailey understood he

---

[2]   The indictment actually charged Bailey with both using and carrying a firearm during and in relation to a drug trafficking offense and possessing a firearm in furtherance of such an offense, R. 1 at 2, but at trial, the government relied solely on the possession prong of section 924(c)(1)(A).

[3]   The judge found that Allen was not forthcoming regarding the status of the pending criminal charges against him and what he hoped to gain from his testimony against Bailey.

would be selling marijuana as well as the gun to Allen and Johnston at the March 31 transaction. Judge Mihm was also satisfied that the evidence established a specific, non-theoretical nexus tying Bailey's possession of the gun to a drug offense—in this case, the marijuana sale to Allen. *See generally United States v. Castillo*, 406 F.3d 806, 815 (7th Cir. 2005) (government must present viable theory supported by specific, non-theoretical evidence to demonstrate how gun furthered drug possession or distribution). He found persuasive the Fourth Circuit's decision in *United States v. Lipford*, 203 F.3d 259, 267 (4th Cir. 2000), which recognized that, given the illicit nature of the narcotics trade, a drug purchaser may have a need and interest in bolstering his credentials with a seller by assenting to the seller's offer to sell him a gun in addition to drugs; in that sense, the buyer's willingness to purchase the gun facilitates the drug purchase by establishing the buyer as a good customer in the eyes of the seller. In this case, the converse was true. Bailey was in the business of selling both guns and drugs (in the district court's words, he operated a "one-stop shop," R. 32 at 7; *see also* R. 46 at 14), but it was the gun that brought Allen to Bailey as a buyer, and when Bailey offered to sell him marijuana as well, Allen (at Anderson's instruction) agreed, as a means of bolstering his credentials with Bailey. In this scenario, the sale of the gun made the drug purchase possible by bringing Bailey a prospective customer for a secondary marijuana sale that he might not otherwise have made. In short, it was not mere coincidence that the gun was present and changed hands at the same time as the marijuana transaction; there had been multiple discussions of

the concurrent sales prior to consummation, and it was the gun purchase that furthered the marijuana purchase.

## II.

Bailey challenges the sufficiency of the evidence underlying his section 924(c) conviction. We review de novo the district court's denial of his Rule 29 motion for judgment of acquittal. *E.g.*, *United States v. Johnson*, 874 F.3d 990, 998 (7th Cir. 2017). Construing the evidence in the government's favor, we ask whether any rational trier of fact could find the elements of the offense beyond a reasonable doubt. *Id.* The section 924(c) charge in this case required the government to establish three elements: that Bailey distributed marijuana to Allen, that he possessed a firearm, and that his possession of the firearm was "in furtherance of" the marijuana transaction. § 924(c)(1)(A); *see United States v. Castillo, supra*, 406 F.3d at 812. There is no dispute as to the first two elements: Bailey's appeal is focused solely on whether his possession of the firearm was in furtherance of the marijuana sale, so we confine our review to that element of the offense.

As we have noted, Bailey's position is that the sale of the gun in this case was "merely coincident with" the sale of the marijuana. Bailey Br. 18. This is not the usual scenario in which a firearm is used as a means of protecting or intimidating the parties to a drug transaction. The government's theory instead is that Bailey's sale of the firearm to Allen and Johnston fostered the secondary sale of marijuana in the sense that it was the firearm that lured Allen into his orbit and brought him a customer for his marijuana, in the same way that grocery and convenience stores use the lure of staples such as milk and

bread (typically placed strategically at the back of the store) to attract customers who will make additional purchases once on the premises. But Bailey insists that there is nothing to tie the gun sale to the marijuana sale. He points out that Allen had made no advance commitment to purchase marijuana as well as the gun; that one sale was not conditioned in any way on the other; that there was no discussion of the terms of any marijuana purchase; that the gun was the focus of the parties' discussions; and that he (Bailey) had no expectation prior to the transaction that either Allen or his friend (Johnston) would, in the end, purchase marijuana. *Cf. United States v. Wilson*, 115 F.3d 1185, 1191–92 (4th Cir. 1997) (where informant sought to buy marijuana from defendant, defendant agreed to sell informant as much marijuana as he wanted and then spontaneously offered to sell informant a rifle in addition to marijuana, and informant then elected to purchase the rifle and ammunition only instead of the marijuana, the defendant's sale of the rifle did not further his marijuana sales; "[i]t was a completely independent, yet contemporaneous action").

As the parties agree, the natural and ordinary connotation of "in furtherance of" is furthering, advancing, or helping forward. *Castillo*, 406 F.3d at 814. Thus, the government bears the burden of articulating a viable theory as to how the firearm advanced the possession or distribution of narcotics and presenting specific, non-theoretical evidence to tie the gun and the narcotics together. *Id.* at 815. The inquiry is obviously a fact-intensive one, and the particular nexus may vary from case to case. *See id.*

Bailey is right, of course, to point out that this is not the frequent scenario in which a gun is used, displayed, or in some

other way employed to protect the drugs, the proceeds of drug sales, or the dealer himself. *See United States v. Amaya*, 828 F.3d 518, 525 (7th Cir. 2016) (collecting cases). To that extent, most of the factors we have cited as relevant to the determination of whether the gun in some manner furthered the drug transaction (including the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, whether it was stolen, the legal or illegal status of the defendant's possession of the gun, whether it was loaded, the proximity of the gun to drugs or drug proceeds, and the timing and circumstances in which the gun was found), *see Amaya*, 828 F.3d at 525–26 (citing *United States v. Huddleston*, 593 F.3d 596, 602 (7th Cir. 2010)), have no real relevance here. But using the gun as a means of protection is not the sole scenario to which section 924(c) applies. Bailey himself concedes that trading a gun for drugs can amount to use of the gun in furtherance of a drug transaction. *See Smith v. United States*, 508 U.S. 223, 113 S. Ct. 2050 (1993) (exchange of gun for narcotics constitutes "use" of firearm during and in relation to drug trafficking offense under section 924(c)(1)); *see also United States v. Vaughn*, 585 F.3d 1024, 1029–31 (7th Cir. 2009) (defendant offered rifle he knew his drug customer wanted as incentive for customer to re-sell the fronted marijuana quickly and at full price so that defendant would be paid for the marijuana in timely manner). So we must instead consider, as a matter of logic, whether the district judge as the trier of fact reasonably could find that the sale of the gun to Allen and Johnston meaningfully furthered the sale of the marijuana to Allen, as the government postulates, or whether the gun sale was simply coincident with the marijuana sale, as Bailey contends.

We believe the evidence was sufficient to support the district court's finding that the gun sale facilitated the marijuana sale in such a way as to satisfy the "in furtherance of" element of section 924(c). There is no dispute that what Allen wanted was the gun: that was the purchase that he and Bailey negotiated via phone and text, and that was the purchase that Bailey, Allen, and Johnston (as Allen's "buddy") anticipated consummating on March 31 at Bailey's home. Nor is there any dispute, however, that Bailey was in the business of selling marijuana as well as guns, and that he had mentioned the availability of "weed" for purchase to Allen at least once. (Bailey insists that the subject came up only once prior to March 31, but the district court found that the potential purchase of marijuana was discussed by Bailey and Allen multiple times in advance of the March 31 transaction, R. 46 at 14, and that finding was not clearly erroneous.) It is true that Bailey did not insist on Allen purchasing marijuana as a condition of the gun sale; nor was the price or any other aspect of the latter sale dependent on Allen buying some marijuana from Bailey. But in a literal sense, the gun purchase was what brought Allen to Bailey's home, where Bailey offered him the opportunity to purchase marijuana, and in that sense Bailey's agreement to sell the gun to Allen and Johnston made the secondary sale of marijuana to Allen possible. Judge Mihm was free to conclude, as he did, that one aspect of Bailey's business (gun sales) furthered the second aspect (marijuana sales) by bringing him customers for marijuana who would not otherwise have come to him but for the prospect of purchasing a gun—in the same way that legitimate retailers use one set of products to lure customers into so-called impulse purchases.

The two sales at issue here were more than simply coincidental in this respect.

Moreover, Bailey does not contest the notion, advanced in the Fourth Circuit's *Lipford* decision, that a buyer in an illicit market (whether for drugs or guns) may wish to enhance his *bona fides* with a seller by accepting the seller's offer to sell him a second item of contraband (in *Lipford*, a gun; here, the marijuana). 203 F.3d at 267. In this case, Anderson advised Allen to pursue Bailey's offer to sell him marijuana in addition to the gun as a means of establishing his credibility with Bailey. We see nothing wrong with this additional theory as to how the gun purchase facilitated the marijuana purchase, in the sense that it indicates the buyer (Allen) would not have purchased the marijuana but for his desire to purchase the gun from Bailey.

We add that Bailey's sale of marijuana to Allen was not by happenstance, a circumstance that might have weakened the nexus between the two transactions. The record suggests that Bailey was engaged in the sale of marijuana and firearms on a regular basis: Bailey mentioned other gun sales during his texts and phone calls with Allen and during the March 31 transaction, and when he distributed the five baggies of marijuana to Allen, he did so from a larger stash of the drug. (The search of Bailey's home confirmed the presence of a significant quantity of marijuana, along with a digital scale.) The district judge himself characterized Bailey's enterprise as offering "one-stop shopping" for both marijuana and firearms. R. 46 at 14; *see also* R. 32 at 7–8. And of course it was Bailey who at the start of his negotiations with Allen proposed to sell him marijuana in

addition to the firearm.[4] So it was not as if the secondary marijuana sale occurred by serendipity, as it might have, for example, had Allen or Johnston, in finalizing the purchase of the firearm, noticed Bailey smoking a joint of marijuana and asked him if he had any to sell them. One can infer from the evidence that Bailey, having interested Allen in the gun purchase, saw an opportunity to make an additional marijuana sale and did so. This was enough to satisfy the "in furtherance of" prong of section 924(c).

### III.

For the foregoing reasons, we conclude that the evidence is sufficient to support Bailey's conviction pursuant to section 924(c).

AFFIRMED

---

[4] The district court noted that there was some dispute as to whether it was Bailey or Allen who first raised the subject of marijuana. R. 46 at 13–14. Viewing the evidence in the light most favorable to the government, we have assumed that it was Bailey.