# United States Court of Appeals
## For the First Circuit

Nos. 19-2010, 19-2017

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM RAMIREZ-FRECHEL, JONATHAN RAMIREZ-FRECHEL,

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, Jr., U.S. District Judge]

Before

Kayatta and Barron, Circuit Judges,
and Saris,* District Judge.

Johnny Rivera-Gonzalez, with Alex Omar Rosa-Ambert on brief, for appellant William Ramirez-Frechel.
Juan F. Matos de Juan on brief for appellant Jonathan Ramirez-Frechel.
Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

---

* Of the District of Massachusetts, sitting by designation.

January 13, 2022

**SARIS**, **District Judge**.  Two brothers, Jonathan and William Ramirez-Frechel, were convicted of gun and drug crimes and were sentenced to 111 months' imprisonment.  They now appeal the district court's denial of their Rule 29 sufficiency of the evidence challenges to their convictions for possession of a firearm in furtherance of a drug trafficking crime.  See 18 U.S.C. § 924(c)(1)(A).  William also contests the district court's admission of certain WhatsApp messages.  Finally, they both argue the district court inappropriately applied a four-point enhancement when calculating their guidelines ranges under the United States Sentencing Guidelines ("U.S.S.G.").  The government concedes this last point, so long as the sufficiency challenge is denied, but says the enhancement should be applied if the sufficiency challenge is sustained.

## I.    BACKGROUND FACTS

We begin with the background facts.  An undercover Puerto Rico Police Department officer, Agent Pablo García-Irizarry ("García"), arranged to purchase a Glock pistol from a man named "Juanki."  On March 16, 2017, García arrived at the arranged meeting place and contacted Juanki, who told García that he was waiting for Jonathan to bring the pistol.  When Juanki and Jonathan arrived at the meeting place, Juanki got into García's car and gave him a .45 caliber Glock pistol, a thirteen-round magazine with eleven rounds of ammunition, and a twenty-four-round magazine

with sixteen rounds of ammunition. García paid Juanki the arranged price of $1,700.00, and all three then discussed doing business in the future: Jonathan told García that the pistol was his, that he could get ahold of automatic weapons for García, and that he could get marijuana for García (backed up by pictures on his cell phone). He gave García his phone number so they could keep talking.

That evening, Jonathan offered to sell García a 9mm IntraTec (a semi-automatic pistol) for $1,200.00. García told Jonathan he was interested, and they continued speaking. As related by García, they "talked about the IntraTec pistol, the price, and the weed" and planned where to meet to complete the sale of those items (at a package price of $2,100.00). Jonathan and William met García the next day on March 17th and sold him a 9mm IntraTec, one twenty-round magazine, and a bag of marijuana, all of which Jonathan had brought inside the same black bag. García confirmed that the marijuana was the half a pound of marijuana they had agreed he would purchase for $900.00 as part of the agreement. William then told García that he had a thirty-round magazine with twenty-eight rounds of ammunition to sell for the Glock that García had purchased the day before. The brothers initially asked for $100.00 for the magazine but then lowered the price of the marijuana by $100.00 so the total purchase price for the package (the gun, the marijuana, and the magazines) remained $2,100.00.

García kept in touch over cell phone with the brothers over the next few days, and García and William arranged the sale of an American Tactical Rifle, with a thirty-round magazine, and four .223 caliber bullets for $2,500.00. William sent Agent García photos of rifles via WhatsApp text message. The sale was completed on March 23, 2017, and afterwards García continued to correspond with a number that he testified belonged to the brothers (though it was a different number from the one he had previously used to speak with them). Through this number, García and the brothers exchanged WhatsApp messages after the March 23rd transaction in which the brothers offered to sell García more weapons, sent him images of an AK-47 and of marijuana, and offered to sell them to him.

Because of these events, the brothers were each indicted on four counts. In three, they were co-defendants: one count of engaging in the business of dealing firearms without a license for the March 17th sale, 18 U.S.C. §§ 2, 922(a)(1)(A), 923(a), 924(a)(1)(D); one count of possession of a firearm in furtherance of a drug trafficking crime for the March 17th sale, 18 U.S.C. §§ 2, 924(c)(1)(A); and one count of possession with intent to distribute controlled substances for the March 17th sale, 21 U.S.C. § 841(a)(1). William was also indicted for unauthorized firearm dealing for the March 23rd sale, and Jonathan was indicted for

unauthorized firearms dealing for the March 16th sale.  See 18 U.S.C. §§ 922(a)(1)(A), 923(a), 924(a)(1)(D).

At trial, the brothers objected to the admission of the WhatsApp messages between García and the brothers after March 23rd on grounds of irrelevance and impermissible character evidence. The district court overruled the objections because it determined the messages established the "context" and "overall scheme that was taking place."  The jury convicted the brothers on all counts.

At sentencing, in calculating the brothers' guidelines ranges, the district court applied a four-point enhancement to each because they possessed a firearm in relation to another felony under U.S.S.G. § 2K2.1(b)(6)(B) (2018).  Over defendants' objection, the district court imposed a sentence of 111 months' imprisonment for each brother.  The brothers filed a joint Rule 29 motion on the count of possession of a firearm in furtherance of a drug trafficking crime; the district court denied the motion, giving rise to this appeal.

## II.   STANDARD OF REVIEW

Preserved sufficiency challenges are reviewed de novo, "considering the evidence, both direct and circumstantial, in the light most friendly to the verdict."  United States v. Bobadilla-Pagan, 747 F.3d 26, 32 (1st Cir. 2014).  Appellate courts are not to "re-weigh the evidence or second-guess the jury's credibility determinations."  Id.  "[I]f the verdict is 'supported by a

- 6 -

plausible rendition of the record,' we must uphold it." Id. (quoting United States v. Cortés-Cabán, 691 F.3d 1, 16 (1st Cir. 2012)). Preserved evidentiary challenges are reviewed for abuse of discretion. United States v. Walker, 665 F.3d 212, 228 (1st Cir. 2011). Challenges to the reasonableness of a criminal sentence imposed under the advisory guidelines regime are reviewed for abuse of discretion, with the district court's factfinding reviewed for clear error and its interpretation and application of the sentencing guidelines reviewed de novo. United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013). Finally, we may "affirm on any basis apparently in the record," even where the government fails to argue that basis. United States v. Farmer, 988 F.3d 55, 64 n.7 (1st Cir. 2021) (quoting Williams v. United States, 858 F.3d 708, 714 (1st Cir. 2017)).

## III. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

The brothers argue their convictions for possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), were based on insufficient evidence because the IntraTec pistol and the marijuana sales on March 17th were "two parallel but distinct transactions" and the sales were "unrelated." The government argues that the gun sale facilitated the marijuana sale because it was part of a package deal with the

- 7 -

marijuana and selling the gun was "good business strategy to attract and retain customers."

There is a mandatory minimum sentence for any person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). To convict a defendant for possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), the prosecution must prove beyond a reasonable doubt that the defendant "1) committed a drug trafficking crime; 2) knowingly possessed a firearm; and 3) possessed the firearm in furtherance of the drug trafficking crime." United States v. Pena, 586 F.3d 105, 112 (1st Cir. 2009). Only the third in-furtherance element is contested here.

"The 'in furtherance of' element does not have a settled, inelastic, definition." United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008). To establish that a defendant possessed a firearm "in furtherance of" a drug trafficking crime, the government must show by specific facts "a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime." Pena, 586 F.3d at 113 (citing Marin, 523 F.3d at 27). Courts apply a multifactor analysis to determine whether a

sufficient nexus between the firearm and the drug crime exists. Id.[1]

This case is not the typical conviction for possession of a firearm in furtherance of drug trafficking. For example, in Pena, we held that a sufficient nexus existed where the defendant was carrying the firearm to protect his drugs and drug proceeds. 586 F.3d at 112-13. However, courts have held that the nexus test for the in-furtherance element has been met in other contexts. For example, we have held that "a defendant who exchanges drugs for guns 'possesses' the guns 'in furtherance' of a drug trafficking crime within the meaning of 18 U.S.C. § 924(c)(1)(A)." United States v. Gurka, 605 F.3d 40, 41 (1st Cir. 2010) (involving a defendant who paid the agent cash and drugs to obtain guns). In a related line of cases, two circuits have held that evidence of selling guns and drugs together in a single transaction could support a jury conviction under 18 U.S.C. § 924(c)(1)(A) for "us[ing]" a firearm "during and in relation to" a drug trafficking

---

[1] In the typical case, the court assesses whether there is a sufficient nexus by doing a multi-factor objective analysis and assessing the defendant's subjective intent. Bobadilla-Pagan, 747 F.3d at 35. The objective factors include: "(1) the proximity of the firearm to drugs or contraband; (2) whether the firearm was easily accessible; (3) whether the firearm was loaded; and (4) the surrounding circumstances." Id. "Evidence of subjective intent might include a showing that a defendant obtained a firearm to protect drugs or proceeds. Where direct evidence of subjective intent is lacking, the jury may infer intent from the objective circumstances." Id. (citation omitted).

crime.  See United States v. Claude X, 648 F.3d 599, 604 (8th Cir. 2011) (holding that the meaning of "use" in § 924(c) caselaw "clearly encompasses selling a firearm and drugs, in the same container, in a single transaction"); United States v. Lipford, 203 F.3d 259, 266-67 (4th Cir. 2000) (holding that the sale of drugs and firearms was sufficient to meet the "in relation to" requirement because the participation in the drug transaction was facilitated by the firearm transaction).

Jonathan points to the legislative history of § 924(c)(1)(A) to support the argument that evidence showing only that a defendant sold guns and drugs together would not be enough to support a conviction for possessing a firearm in furtherance of a drug trafficking crime.  When "in furtherance" was added to § 924(c)(1)(A), the House Committee on the Judiciary Report observed that "in furtherance of" is a "slightly higher standard" than the "during and in relation to" language.  H.R. Rep. No. 105-344, at 11 (1997).  As noted by the Committee, "[b]oth Webster's New International Dictionary and Black's Law Dictionary define[d] 'furtherance' as the 'act of furthering, helping forward, promotion, advancement, or progress.'"  Id. (citing Webster's New International Unabridged Dictionary 1022 (2d ed. 1959); Black's Law Dictionary 675 (6th ed. 1990)).[2]  So in everyday meaning, the

---

[2] Current dictionary editions have similar definitions: Black's Law Dictionary defines furtherance as "[t]he act or process of

- 10 -

government must prove that the defendants' firearm sale forwarded, promoted, or advanced the drug sale. Cf. Watson v. United States, 552 U.S. 74, 79 (2007) (emphasizing that courts should define statutory language "as we normally speak it").

A recent Seventh Circuit case stands pretty much on all fours. See United States v. Bailey, 882 F.3d 716 (7th Cir. 2018). Just as here, the seller's possession of a gun for sale brought the buyer to his door. Just as here, the seller used the occasion to entice the buyer to purchase drugs as well. The Seventh Circuit reasoned that "[b]ecause it was the opportunity to purchase a firearm that brought the informant to [the seller] and made possible the secondary sale of marijuana to the informant, the facts support the finding that [the seller's] possession of the weapon furthered the marijuana sale." Id. at 717. We agree.

Our dissenting colleague does not disagree with the legal test we apply, but with the sufficiency of the evidence and what inferences can reasonably be drawn from the record. He posits that such a seller might simply be participating in two "distinct" markets, suggesting that it was serendipitous that the gun buyer

---

facilitating the progress of something or of making it more likely to occur; promotion or advancement." Furtherance, Black's Law Dictionary (11th ed. 2019). Merriam-Webster defines "furtherance" as "a helping forward: advancement, promotion." Furtherance, Merriam-Webster Unabridged Dictionary, https://unabridged .merriam-webster.com/unabridged/furtherance (last visited Oct. 20, 2021).

was also interested in drugs.  But jurors may well think most sellers more clever than that, especially given the chronology here: Jonathan offered a gun, got a putative buyer, then promptly offered drugs as well before even closing the gun sale.  And we cannot agree that selling a tool of the drug trade is selling in a market that is wholly "distinct" from the drug market.

A person hoping to sell coffee would be well-advised to offer donuts rather than shovels.  So too, here, jurors could use their common sense that selling guns is a reasonable way to get in contact with those who might buy illegal drugs.  After all, as our circuit has repeatedly recognized, guns are tools of the drug trade.  See, e.g., United States v. Tanco-Baez, 942 F.3d 7, 21 (1st Cir. 2019) (noting "the oft-remarked-upon connection between firearms and drug trafficking") (citing United States v. Bianco, 922 F.2d 910, 912) (1st Cir. 1991) ("[W]e often observe that firearms are common tools of the drug trade.")); United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011) ("[D]rug dealing is notoriously linked to violence."); United States v. Green, 887 F.2d 25, 27 (1st Cir. 1989) ("This circuit and others have recognized that in drug trafficking firearms have become 'tools of the trade.'").

Importantly, the evidence supports the government's argument that the gun and drugs were delivered together in a package deal with a single lump sum bill.  The fact that the

sellers here did not also give the buyer the bag in which they delivered the two offerings hardly belies the fact that the gun and drugs came in a single package that never would have been delivered but for the offer in the first instance of the gun. Additionally, Jonathan offered to sell García both guns and drugs in their meeting on the 16th and again in the post-March 23rd WhatsApp message.[3] The government does not argue, and we do not hold, that it suffices under § 924(c) for the government to prove that the defendant merely sold guns and marijuana near in time to one another. A jury could reasonably have found that the sale of marijuana together with the guns was not a matter of happenstance, serendipity, or an afterthought; it was the defendants' business model. See Bailey, 882 F.3d at 721–22 (pointing out that the sale of drugs to the buyer was not by "happenstance" because the defendant was engaged in the sale of drugs and guns on a regular basis).

In sum, based on the chronology of the dealings and the relationship of the two products purchased in a single transaction, the jury had sufficient evidence to find that the sale of guns sufficiently promoted, advanced, and made more likely to occur the sale of marijuana, satisfying the "in furtherance of" inquiry.

---

[3] The parties disagree about the intent of the undercover officer, but the intent of the buyer is not an element of the offense or even one of the factors outlined in Bobadilla-Pagan, 747 F.3d at 35, and so is not dispositive here.

- 13 -

## B. ADMISSION OF THE WHATSAPP MESSAGES

Only William challenges the admission of the WhatsApp messages sent for about a month after March 23rd. He argues the messages should have been excluded for lack of relevance because the indictment charged conduct only up through March 23, 2017. He also says that even if the messages were relevant, they were unfairly prejudicial, and claims that the government failed to provide the jury with proper context for the messages. Finally, he argues the messages were inappropriate character evidence in violation of Federal Rule of Evidence 404(b).

Evidence is relevant if it is probative and material. Fed. R. Evid. 401. Relevant evidence is generally admissible unless its probative value is substantially outweighed by the danger of, inter alia, unfair prejudice. Fed. R. Evid. 403. Evidence of a person's "other" crimes, wrongs, or acts is not admissible to show a propensity to act in a particular way but may be admissible for another purpose. Fed. R. Evid. 404(b)(1)-(2). Evidence of bad acts that are "part of the charged crime" is admissible as "intrinsic" evidence. United States v. Rodríguez-Soler, 773 F.3d 289, 297-98 (1st Cir. 2014); see also United States v. Souza, 749 F.3d 74, 84 (1st Cir. 2014) (holding intrinsic evidence includes other acts that go to an element of the charged offense); United States v. Brizuela, 962 F.3d 784, 793-94 (4th Cir. 2020) (holding that uncharged conduct is intrinsic and not

- 14 -

barred by Rule 404(b) when it arises from the same series of transactions as the charged offense).

The government argues that the messages were relevant to the elements of a charged crime: "engag[ing] in the business" of dealing in firearms without a license. See 18 U.S.C. § 922(a)(1)(A). A person engages in the business of dealing in firearms when he "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business with the principal objective of livelihood and profit through the repetitive purchase and resale of firearms." 18 U.S.C. § 921(a)(21)(C). Excluded from this category are people who "make[] occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sell[] all or part of [their] personal collection of firearms." Id.

Because the messages showed William was engaged "in the business" of dealing in firearms with the purpose of making a livelihood and profit, the district judge did not abuse his discretion in admitting the WhatsApp messages that happened in the month after March 23rd as intrinsic evidence of the charged gun-dealing crime. And the district court did not abuse its discretion in concluding they were not unfairly prejudicial. See Old Chief v. United States, 519 U.S. 172, 180 (1997) (explaining that evidence is unfairly prejudicial if it might "lure the factfinder

- 15 -

into declaring guilt on a ground different from proof specific to the offense charged").

## C. APPLICATION OF THE SENTENCING ENHANCEMENT

Defendants argue that the district court imposed procedurally unreasonable sentences because the calculations of the sentencing guidelines ranges were faulty. See United States v. Trinidad Acosta, 773 F.3d 298, 309 (1st Cir. 2014). In reviewing a sentence, the court of appeals "must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." Gall v. United States, 552 U.S. 38, 51 (2007). "[A]rguments that the sentencing court erred in interpreting or applying the guidelines" are reviewed de novo. United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012) (citing United States v. Pho, 433 F.3d 53, 60 (1st Cir. 2006) (holding that such "error[s] of law" are reviewed de novo and render a sentence "per se unreasonable")).

The parties agree that the § 2K2.1(b)(6)(B) four-point enhancement that was applied in calculating the brothers' guidelines sentencing ranges was in error if the court declined to set aside the § 924(c)(1)(A) convictions. Defendants objected to the four-level enhancement at the sentencing hearing.

We agree that the district court erred in applying a four-point enhancement at sentencing pursuant to § 2K2.1(b)(6)(B).

The relevant sentencing guideline for a conviction under § 924(c) is § 2K2.1(b). "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, [courts] do not apply any specific offence characteristic for possession . . . of . . . [a] firearm when determining the sentence for the underlying offense." U.S.S.G. § 2K2.4, cmt. n.4 (2018). So if the weapon that was possessed "in the course of the underlying offense also results in a conviction that would subject the defendant to an enhancement under . . . § 2K2.1(b)(6)(B) . . . , [courts] do not apply that enhancement." Id. Accordingly, the sentences must be vacated. Cf. Molina-Martinez v. United States, 136 S. Ct. 1338, 1346 (2016) ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome.").

## IV.  CONCLUSION

For the reasons stated above, we find that the district court did not err when it denied the brothers' Rule 29 motion and allowed the WhatsApp messages from after March 23rd to be admitted at trial. We vacate the brothers' sentences and remand for resentencing in accordance with this opinion.

**Affirmed in part, reversed in part.**

**-Dissenting Opinion Follows-**

- 17 -

**BARRON, Circuit Judge, dissenting**. Under 18 U.S.C. § 924(c)(1), any person who "possesses a firearm" "in furtherance of" a "drug trafficking crime" shall be sentenced to a prison term of no less than five years. In amending § 924(c) to encompass such "in furtherance of" cases, "Congress likely had in mind a gun's possession in order to threaten or use it, if necessary, to accomplish the drug sale or at least to make the other party (or interlopers) fear its use." United States v. Gurka, 605 F.3d 40, 46 (1st Cir. 2010) (Boudin, J., concurring). "[O]bvious examples" would be "[p]ossessing a gun to protect one's drugs from theft incident to sale or to secure a base of operations." Id. But, words being what they are, this Circuit had construed the "in furtherance of" language prior to this case to encompass the far less obvious circumstance of a barter in which a gun is exchanged for drugs. In such a case, we had held that the "in furtherance of" element is satisfied because the gun serves as consideration for the drugs and its possession thus advances the drug trafficking crime. See id. at 45.

Other circuits have stretched the "in furtherance of" element to encompass even more peripheral cases than the one involving barter. They have held that the element is met whenever the possession of the firearm is "causally connected" to the drug offense and that, in consequence, the sale of a gun can constitute possession of it "in furtherance" of a drug offense even when the

- 18 -

weapon is not exchanged directly for the drugs.  Id. at 46.  Rather, the gun need only have been offered for sale to a customer for the purpose of enticing that customer to make a purchase of drugs down the line.  See United States v. Bailey, 882 F.3d 716, 721-22 (7th Cir. 2018).

The government asks us -- in effect -- to follow suit in affirming the convictions at issue here based on there being a causal connection between a defendant's possession of a gun and a drug offense.  It argues that the "in furtherance of" element may be proven beyond a reasonable doubt so long as there is sufficient evidence in the record either that a sale of a gun and drugs by a defendant to a customer was "a package deal" or that the defendant's "sale of a gun is what [entices or otherwise] brings a purchaser [of drugs] to the table."  The government then goes on to argue that there is sufficient evidence of either a "package deal" or "enticement" in the record here to support the convictions.

But, even if the "in furtherance of" element may be satisfied by proof of a "package deal" or "enticement," I am not persuaded that the record in this case suffices to show anything more than that the gun that the defendants are charged with possessing was sold along with marijuana to the same buyer at the same time.  Thus, because Congress plainly intended for the "in furtherance of" element to require something more than proof of a

mere close temporal nexus between a defendant's possession of a gun and a drug trafficking crime, I would reverse these convictions.[4]

## I.

The question presented by a sufficiency-of-the-evidence challenge "is not whether a jury rationally could have acquitted." United States v. Levin, 13 F.4th 96, 99-100 (1st Cir. 2021) (quoting United States v. Breton, 740 F.3d 1, 16 (1st Cir. 2014)).

---

[4] Notably, prior to Congress's amendment of § 924(c), which added the "in furtherance of" formulation of the offense at issue here, the statute provided that the five-year mandatory minimum prison sentence applied only when a person "uses or carries" a firearm "during and in relation to" a drug trafficking crime. See Pub.L. No. 105-386, 112 Stat. 3469 (1998) (codified at 18 U.S.C. §§ 924, 3559). By adding the class of cases encompassed in the "in furtherance of" amendment, Congress not only shifted "uses or carries" to "possess[ion]," but it also shifted "during and in relation to" to "in furtherance of." Thus, Congress must have meant for that latter phrase to mean something distinct from "during and relation to" or it would not have shifted to the "in furtherance of" phrase in making the amendment. See Env't Def. v. Duke Energy Corp., 549 U.S. 561, 574 (2007) (explaining the "natural presumption that identical words used in different parts of the same act are intended to have the same meaning" and that different words have "different shades of meaning" (quoting Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932))). I note as well that the government makes no argument here that the conduct in question falls with the "uses or carries" "during and in relation to" portion of § 924(c). Instead, it stakes its defenses of these convictions solely on the ground that the underlying crime that the defendants committed was "posses[ion]" of a firearm "in furtherance of" a drug trafficking offense without suggesting that even if the evidence does not suffice to show that, the defendants still violated § 924(c) by "us[ing] or carr[ying]" a firearm "during and in relation to" a drug trafficking offense. I thus do not address any question regarding that possibility.

- 20 -

The question is whether the jury "rationally could have found guilt beyond a reasonable doubt." Id.

Nonetheless, "[w]hen a jury is confronted . . . with equally persuasive theories of guilt and innocence[,] it cannot rationally find guilt beyond a reasonable doubt." United States v. Andujar, 49 F.3d 16, 22 (1st Cir. 1995); see also United States v. Montilla-Rivera, 115 F.3d 1060, 1064 (1st Cir. 1997) (same). Otherwise, we would be permitting mere speculation to suffice to support a finding of guilt beyond a reasonable doubt.

It follows, in my view, that the fact that the record shows that a defendant was selling a gun and drugs at the same time to a single customer cannot in and of itself suffice to show beyond a reasonable doubt that the defendant's possession of the gun was "in furtherance of" the sale of the drugs. A person selling in two markets might be selling in each to further sales in the other (just as he might be selling in only one to attract sales in the other). But, it is just as possible, all else equal, that the person making those sales is simply exploiting two distinct markets, without having any intent -- or expectation -- that the sales in one will drive sales in the other. And, I see no reason why, in principle, the same would not also be true of a black market. For, while illegal markets are distinct from above-board ones, I know of no reason to presume the law of supply and demand does not apply in the shadows. Thus, to show beyond a

- 21 -

reasonable doubt that a black-market gun seller is, in fact, making his sales in that market to further his marijuana sales, the record must show more than that he is selling in each of those markets at the same time.

These observations do not strike me as especially controversial. In fact, neither the government nor the majority takes issue with them. Instead, the government, like the majority, relies on the more fact-bound contention that the evidence here suffices to show beyond a reasonable doubt that these defendants possessed a gun to further the sale of marijuana. Specifically, the government and the majority each points to the evidence in the record that supposedly shows that the defendants sold a gun and marijuana on March 17, 2017 to a single buyer as a "package deal," while the government also points to the evidence in the record that it contends suffices to show, at the least, that the gun sale on that date to that customer was made to "entice" that customer's purchase of marijuana. Thus, the critical question on appeal is whether the record does contain sufficient evidence of a "package deal" or "enticement." See United States v. Marin, 523 F.3d 24, 27 (1st Cir. 2008) (explaining that to assess whether the "in furtherance of" element of § 924(c) is met, this Court "analyze[s] . . . [the] evidence from both subjective and objective standpoints"). And, as I will next explain, the record in my view does not.

## A.

I'll start with the issue of whether the record suffices to show, as the government puts it, that "the firearm and the marijuana were part of a single package deal transaction rather than two independent and unrelated sales." The government, like the majority, points first to the evidence in the record that "Jonathan and William negotiated the sale for both the IntraTec pistol and the marijuana as part of one transaction . . . and then delivered them in the same briefcase on a set date for a total price of $2,100" to the undercover law enforcement agent who was posing as the buyer.

The record does supportably show that the total price negotiated for the two items was $2,100. But, the evidence also shows that the price for each item was negotiated separately in the conversations between the defendants and the undercover purchaser: $1,200 for the IntraTec pistol and $900 for the marijuana. Thus, the evidence of the negotiations over the pricing for the two items that were sold provides no basis for concluding that there was a "package deal."

There is evidence in the record that shows that the pistol and the drugs were brought to the purchaser at the point of sale in the same black bag. But, that evidence also fails to provide a supportable basis for a rational juror to reach the conclusion that the sale of the gun and the sale of the marijuana

- 23 -

were a "package deal."  The record shows that Jonathan removed the two items that were being sold from the bag individually when giving each of them to the buyer.  The record thus does not show that Jonathan handed the bag with all the merchandise to the customer as might have been expected in a "package deal."

The government also points out that other evidence that was adduced at trial supportably shows that the defendants lowered the price of the marijuana so that they could sell a magazine for a firearm to the buyer who purchased the IntraTec pistol that the defendants already had agreed to sell to him.  But, I do not see how this aspect of the record supports the reasonable inference that the transactions that ground the charges at issue were part of a "package deal."

The price of the IntraTec pistol was not part of the negotiations between the buyer and the defendants about the price of either the magazine or the marijuana.  In fact, the magazine in question was not even for the IntraTec pistol.  So, while I suppose a rational juror could conclude that the transactions regarding the marijuana and the magazine were together a "package deal," I do not see how a rational juror could conclude that the IntraTec pistol was part of that "package."

In yet another bid to support the "package deal" theory, the government (like the majority) directs our attention to testimony at trial from the undercover buyer -- Agent Pablo García-

Irizarry -- who bought the IntraTec pistol on March 17. In that testimony, he stated that he "probably [would] not" have gone through with the March 17th transaction in which he purchased a firearm and the marijuana "if it was only a marijuana transaction."

The notion appears to be that this testimony supports the reasonable inference that Agent García was only interested in a "package deal" that included both drugs and guns. But, Agent García did not testify that he communicated this desire for guns to be involved in the marijuana transaction to the defendants. Nor did he testify that a typical buyer of either drugs (of any kind) or guns would be interested in such a drugs-and-guns "package deal." Instead, he testified only that he was motivated to have a gun be part of the deal at issue because he wanted a court case under § 924(c) that would be "solid." No ordinary dealer of drugs and guns, however, would add a gun to a drug deal for that purpose. Thus, this testimony does nothing to show that the defendants intended to be making the "package deal" that the government contends that the record supportably shows that they intended to make.

Finally, to support the "package deal" theory, the government (and seemingly the majority) each points to the March 16th transaction in which Jonathan accompanied another individual, "Juanki," to a gun sale. It was at that transaction that Agent

- 25 -

García first met Jonathan and that Jonathan began to offer to sell Agent García marijuana and/or guns.

The government contends that the evidence in the record regarding those initial negotiations between Jonathan and Agent García supportably shows that "it was always understood that the deal was for García to buy firearms and marijuana." Thus, the government suggests, a rational juror could reasonably infer from the evidence of what transpired on March 16 that the Intratec pistol and the marijuana sold on March 17 were part of a "package deal." In crediting this same contention, moreover, the majority explains that the "chronology" of the events on March 16 suggests that Jonathan, and presumably his brother -- although his brother did not attend the March 16th meeting with Agent García -- offered to sell Agent García marijuana in the same way that a coffeeshop may ask a customer if he wants "a coffee with that donut." Maj. Op. at 10.

But, this donuts-and-coffee (or, with Starbucks in mind, is it coffee-and-donuts?) analogy does not reveal a "package deal" reading of the record to be a commonsensical one. In addition to the fact that donuts and coffee are usually sold separately for separate prices, there is no reason to think of a firearm and marijuana as a natural pairing. That is not just because one does not commonly dunk a gun into marijuana prior to using it (or vice versa). It is also because it is hardly commonly understood that

- 26 -

anyone seeking to buy marijuana illegally is highly likely to also want to buy a gun.

Thus, as best I can tell, the evidence on which the majority and the government each relies concerning the March 16th interactions shows only that Jonathan and, inferentially, his brother were intending to sell both the pistol and the marijuana to a customer who was interested in purchasing each. In addition, nothing in the record indicates that, on March 17, the defendants sold the gun to Agent García as part of a package deal with the drugs that he also bought on that date. In fact, as we have seen, in the actual transaction that occurred on March 17, each item was sold to Agent García for a separately negotiated price rather than for one price that encompassed both items.[5]

**B.**

The government could also be understood to have developed -- if we are being generous -- an alternative argument for rejecting the defendants' sufficiency challenges. Here, the argument is that the evidence suffices to permit a rational juror to find beyond a reasonable doubt that the defendants were in the business of selling guns "in furtherance of" their drug sales,

---

[5] The majority also points to the messages between Agent García and the defendants on March 23 as further evidence that brothers' sold guns and marijuana together as a single "package." But, those messages similarly only involve offers made by the brothers to sell Agent García guns and/or marijuana.

- 27 -

because selling guns "was a good business strategy to attract and retain customers" interested in buying drugs. Thus, the argument proceeds, a juror reasonably could infer that the sale of the gun at issue on March 17, 2017 must have been made, at least in part, for that same business purpose, even if there was no "package deal."

As best I can tell, this enticement-based theory of the case -- unlike the "package deal" theory addressed above -- rests chiefly on the evidence that shows that the defendants lowered the price of the marijuana so that they also could sell a magazine for a gun. But, it is hard to see how evidence that suffices to show that the defendants sold drugs on the cheap to promote a sale of a firearm's magazine shows that the defendants sold the gun in question to further future marijuana sales. After all, the "in furtherance of" element requires the government to prove, beyond a reasonable doubt, that the "<u>firearm</u> was possessed" "in furtherance of" a "<u>drug</u> trafficking crime," 18 U.S.C. § 924(c)(1) (emphasis added), not that the marijuana was possessed in furtherance of a gun trafficking crime.

The government does also point -- once again -- to Agent García's testimony that he would not have gone through with the purchase of the drugs and gun on March 17 if the transaction had been only for marijuana. The government contends that this testimony supports a finding that the defendants' "firearms

dealing" "brought the agent-buyer to them in the first place." But, as I have already explained, Agent García testified that he was motivated to make the purchases of not just a gun but also marijuana on March 17 because he wanted a court case under § 924(c) that would be "solid," and he did so without also testifying that he communicated that motivation to either defendant. Nor did Agent García provide testimony from his experience as a law enforcement officer working in a unit that specializes in drug- and gun-trafficking crimes that the offer of the sale of guns is often made in the black market to entice future drug sales from customers for guns. For these reasons, Agent García's testimony at most shows that the defendants engaged in a gun sale that happened to advance a § 924(c) prosecution that the buyer was hoping to trigger. But, § 924(c)'s "in furtherance of" element is not met by evidence that merely shows that a defendant sold a gun to a buyer who was seeking to prosecute him for violating § 924(c).

The only other evidence that the government could be understood to be pointing to as support for a "bringing them to the table" theory concerns the March 16th transaction in which Agent García both met Jonathan for the first time and purchased a gun from someone other than the two defendants in this case. The evidence does supportably show that Jonathan claimed to Agent García that he was the source of the gun that was sold to Agent García on March 16 by someone other than either Jonathan or

- 29 -

William.  But, there is no evidence that either Jonathan or William arranged that March 16th gun transaction.  Therefore, any conclusion that a juror might draw about how or why Jonathan was there on March 16 is inherently inferential.  And, in every interaction that the defendants had with Agent García, both marijuana and guns were for sale, including the March 17th transaction -- as the government itself points out.

So, to conclude that the defendants possessed a gun for the purpose of furthering their marijuana sales based on the March 16th meeting between Agent García and Jonathan, a juror would have to infer that Jonathan must have been present on March 16 to take advantage of a gun buyer being there so that Jonathan could offer him marijuana, that William must have known as much, that Jonathan's offer on March 16 of guns and marijuana was dependent on the offeree being present at that time only to buy guns, that William must have known that too, etc. etc.  A sufficiency challenge may be rejected based on evidence in the record that supports a reasonable inference.  But, it cannot be rejected when the evidence would require a juror to make as many inferences as would be required here to arrive at a finding of guilt.  See United States v. Guzman-Ortiz, 975 F.3d 43, 55 (1st Cir. 2020) ("[N]either may a judge 'stack inference upon inference in order to uphold the jury's verdict.'" (quoting United States v. Valerio, 48 F.3d 58, 64 (1st Cir. 1995))).

Nor can an appeal to common sense overcome this inference-stacking concern.  It may well be that it is fair to assume that a donut-seller knows that he is selling a product that will attract a ready-made customer base for coffee and so offers the former in part to lure those who want the latter.  But, there is no reason to think, at least based on anything fairly deemed common knowledge, that illegal guns sellers are operating in that market, even in part, to lure marijuana buyers.  Thus, I do not see how it is commonsensical to conclude that those in the illegal gun trade must be seeking to drive marijuana sales if they sell both types of contraband.

## II.

I take seriously the notion that we cannot look at pieces of evidence from the record in isolation in assessing a sufficiency challenge.  See id. at 54.  So, I recognize that the evidence just canvassed must be viewed in its totality.  But, proving that the sale of a gun and the sale of drugs to the same buyer occurred at the same time is not proof that one of those sales caused the other in any way.

Similarly, I take seriously that credibility judgments are for the jury to make, not a reviewing court on a cold record.  See United States v. Serunjogi, 767 F.3d 132, 139 (1st Cir. 2014).  But, there is no witness here to believe or not that could be decisive as between a guilty verdict and an acquittal, as it is

- 31 -

not as if any law enforcement officer testified, based on experience, that in the black market gun sales are made to bring about marijuana sales.

Thus, nothing in the record here would permit a rational juror to find beyond a reasonable doubt that these two defendants were operating in the gun market to further the sale of drugs rather than merely to exploit those two distinct markets to meet such demand as existed in each. As such, nothing in the record suffices to support their convictions, given the "in furtherance of" element of the underlying offense.

That said, I do not mean to suggest the record must contain direct evidence that a defendant who was involved in the sale of drugs and guns was motivated to sell a gun to further the sale of drugs. Admissible testimony about how the illegal gun and drug markets work might well suffice to permit a juror to reasonably infer that the sale of the one must have been to further the sale of the other. So too may circumstantial evidence that demonstrates that a sale of drugs and a gun to a single customer was carried out as a true "package deal" suffice to permit a rational juror to find beyond a reasonable doubt that the gun sale was not an independent transaction but instead furthered the drugs sale.

In other words, there is nothing special about the "in furtherance of" element that prevents the government from proving

that element with circumstantial evidence that gives rise to a reasonable inference that the defendant engaged in the conduct that must be proven to satisfy that element. And so, when evidence giving rise to such an inference is present in the record, an appellate court cannot then undo what the jury has done by drawing a different inference that it deems to be more reasonable. See United States v. Clough, 978 F.3d 810, 816 (1st Cir. 2020).

In this case, though, there is neither testimony about the way that drug and gun markets generally operate nor any transaction-specific evidence that would suffice to permit the reasonable inference either that the sales at issue were part of a "package deal" rather than merely contemporaneous sales or that the defendants put up the gun for sale to attract buyers for drugs that they were also selling. Accordingly, it seems to me that, in this case, a juror could find the "in furtherance of" element satisfied beyond a reasonable doubt only by presuming that anyone selling a gun and marijuana simultaneously to a single customer must be selling the gun to further the sale of the marijuana. But, we could permit such a presumption to carry the day only by reading a statute that requires there to be proof beyond a reasonable doubt that the possession of a gun is "in furtherance of" drug trafficking to be a statute that merely requires that the possession of the gun occurs "during and in relation to" such a drug crime. And, as much as the "malleable" "in furtherance of"

language has been pressed into service to cover cases that no doubt did not occur to its authors, Gurka, 605 F.3d at 46 (Boudin, J., concurring), we cannot read those words to say what they do not say.  Cf. Bailey v. United States, 516 U.S. 137, 143 (1995) ("Had Congress intended possession alone to trigger liability under § 924(c)(1), it easily could have so provided.").

For these reasons, I respectfully dissent.